Virginia Lee **CRAWFORD**, Appellant,

v.

James Darwin **CRAWFORD**, Appellee.

No. 2010–CA–001576–MR.

Court of Appeals of Kentucky.

Dec. 16, 2011.

Tracy D. Frye, Michael A. Frye, Russell, KY, for appellant.

Richard A. Hughes, Ashland, KY, for appellee.

Before TAYLOR, Chief Judge; DIXON and LAMBERT, Judges.

## OPINION

LAMBERT, Judge:

In this dissolution action, Virginia Lee Crawford has appealed from the August 6, 2010, order of the Boyd Circuit Court confirming the report and supplemental report of the Domestic Relations Commissioner (DRC). Virginia asserts that the circuit court, in adopting the DRC's findings and conclusions, did not equitably divide the marital property and debt and that it failed to award maintenance, medical expenses, and attorney fees. Having carefully considered the record, including the transcript of the final hearing before the DRC, we affirm the portion of the order declining to reimburse Virginia for her claimed medical/dental expenses, but we vacate the remainder of the order and remand for further proceedings.

Virginia and James Darwin Crawford were married in Greenup County, Kentucky, on April 11, 2001, and separated on July 31, 2006. James filed a petition for dissolution of marriage on August 10, 2006. In the petition, James indicated that no children were born of the marriage and requested an equitable division of the marital estate as well as restoration of nonmarital property. At that time, James was sixty-four years old and self-employed. Virginia was sixty-eight years old and retired. James also indicated that emergency protective orders were in effect. In her response to the petition, Virginia requested an award of temporary and permanent maintenance as well as fees.

Virginia moved the circuit court for temporary relief, including $1,500.00 per month in maintenance, after she claimed James withdrew the entire balance of $101,889.29 from their credit union account upon the filing of the petition. Her monthly income totaled $1,272.56 from her school retirement and social security benefits, while she alleged that James received in excess of $3,000.00 from his retirement in addition to his income from his cabinet shop. By order entered August 31, 2006, the circuit court granted Virginia temporary and exclusive possession of the marital residence and ordered James to pay the mortgage payment of $539.77 per month as well as the utility bills. Both were restrained from disposing of or transferring any property without leave of court, including the proceeds from the credit union, and they were both restrained from physical contact with one another or from coming within 1,000 feet of each other in any public or private place. However, James was permitted to be on the cabinet shop property, which was next door to the marital residence, from 9:00 a.m. to 5:00 p.m. only. In a later order, the court ordered James to reinstate Virginia's health insurance.

The circuit court referred this matter to the DRC for a final hearing in 2007. In October 2007, Virginia moved to hold the

case in abeyance while she sought medical treatment for a possible brain trauma she claimed to have sustained in a July 2006 altercation with James. She stated that she would lose her health insurance upon dissolution of the marriage and therefore wanted to seek treatment before the marriage was dissolved. In March 2007, Virginia moved to set the matter for a final hearing, noting that a determination had been made on her condition. The circuit court entered a bifurcated decree of dissolution on June 25, 2008, and reserved all other issues concerning the division of property pending a final hearing. Following an unsuccessful attempt at mediation, the circuit court referred the matter to a DRC for the final hearing.

The DRC held a final hearing on April 22, 2010. Both Virginia and James testified regarding improvements to the marital residence (which had been owned by Virginia prior to the marriage); real property purchased from Elizabeth Smith during the marriage; and the source of the funds used to purchase that property, as well as their respective monthly incomes and expenses. The DRC then issued his report and recommendations on May 17, 2010.

In the report, the DRC found that the increase in the mortgage amount on the marital residence from approximately $24,000.00 to approximately $60,000.00 was to pay for Virginia's premarital credit card and automobile debts, and that James used his own premarital money to pay for improvements to the residence, including remodeling the kitchen and bathrooms, and adding vinyl siding. The DRC also found that James had sufficiently traced the funds used to purchase an adjoining lot, as well as to construct a cabinet shop, to his premarital funds. Based on these findings, the DRC concluded that the marital residence should be awarded to Virginia,

along with the associated debt, because the property was further encumbered in order to consolidate and pay her premarital debt. The DRC declined to return James's investment in the residence to him. The DRC then noted that the parties had limited incomes as well as similar expenses and that each was awarded real property that could be liquidated to provide income. While noting that Virginia had a shortfall in paying her expenses, the DRC found that James did not have sufficient funds from his social security payments and retirement to provide maintenance to Virginia. The DRC specifically found that Virginia brought about the additional debt by her own actions and should be responsible for its payment. The DRC found that the parties should bear their respective legal fees based upon their own income and expenses, and declined to find that Virginia established that her medical expenses were related to the altercation. Finally, the DRC relied upon exhibits James introduced regarding the purchase of land during the marriage to find that the purchase price of the land, as well as the cost of building materials, were paid using his nonmarital funds. Accordingly, both the land and the building housing the cabinet shop were awarded to James.

Virginia filed exceptions to the DRC's report and recommendations relative to findings on the mortgage on the residence, the funds used to purchase adjoining property and construct the building, her claimed dental expenses, maintenance, and attorney fees. She specifically objected to the DRC's use of the preponderance standard when deciding the adjoining property issue since such decisions must be based on clear and convincing evidence. In response, James contended that there was a sufficient evidentiary basis for all of the recommended findings, but agreed that a remand would be appropriate to permit the DRC to apply the correct standard of

proof. The circuit court then ordered the DRC to provide a supplemental report regarding its findings on the 1.5–acre tract, using the proper standard of clear and convincing evidence. The DRC issued a supplemental record, finding by clear and convincing evidence that James's premarital funds were used to purchase the adjoining property and construct the building. The circuit court adopted and confirmed the report and supplemental report by order entered August 6, 2010. This appeal now follows.

Our standard of review is set forth in *Hunter v. Hunter,* 127 S.W.3d 656, 659 (Ky.App.2003):

> Under CR [Kentucky Rules of Civil Procedure] 52.01, in an action tried without a jury, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a commissioner, to the extent that the court adopts them, shall be considered as the findings of the court." *See also Greater Cincinnati Marine Service, Inc. v. City of Ludlow,* Ky., 602 S.W.2d 427 (1980). A factual finding is not clearly erroneous if it is supported by substantial evidence. *Owens–Corning Fiberglas Corp. v. Golightly,* Ky., 976 S.W.2d 409, 414 (1998); *Uninsured Employers' Fund v. Garland,* Ky., 805 S.W.2d 116, 117 (1991). Substantial evidence is evidence, when taken alone or in light of all the evidence, which has sufficient probative value to induce conviction in the mind of a reasonable person. *Golightly,* 976 S.W.2d at 414; *Sherfey v. Sherfey,* Ky. App., 74 S.W.3d 777, 782 (2002). An appellate court, however, reviews legal issues *de novo. See, e.g., Carroll v. Meredith,* Ky.App., 59 S.W.3d 484, 489 (2001).

(Footnote omitted). With this general standard in mind, we shall consider the issues raised in this appeal.

The first issue we shall address is whether the circuit court erred in determining that the real property and the cabinet shop were nonmarital assets and in awarding both the shop and the land to James as nonmarital property. Virginia contends that James did not sufficiently trace the funds used to purchase the property, or to build the shop, to his premarital funds by clear and convincing evidence. She further contests the exhibits James offered at the final hearing, arguing that the CD penalty documents do not establish when the withdrawals occurred or the source of funds to pay for the CDs. Furthermore, Virginia points out that the document purporting to show a $36,000.00 expenditure for building the cabinet shop was, in reality, for the amount of $3,660.90. She contends that the DRC's, and the circuit court's, reliance upon these documents to find sufficient tracing of nonmarital assets is erroneous.

Kentucky Revised Statutes (KRS) 403.190 provides the framework for the disposition of property in a dissolution proceeding. *See* KRS 403.190(1) ("the court shall assign each spouse's property to him. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors[.]"). There is a presumption that "[a]ll property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property[.]" KRS 403.190(3). However, this presumption may be overcome by showing that the property at issue was acquired in a method enumerated in KRS 403.190(2), including "[p]roperty acquired in exchange for property acquired before the marriage[.]" KRS 403.190(2)(b).

■■ With the statutory requirements of KRS 403.190 in mind, the Supreme Court of Kentucky extensively addressed the classification and division of property in *Sexton v. Sexton*, 125 S.W.3d 258 (Ky. 2004):

> The disposition of parties' property in a dissolution-of-marriage action is governed by KRS 403.190, and neither record title nor the form in which it is held, *e.g.*, partnership, corporation, or sole proprietorship, is controlling or determinative. Under KRS 403.190, a trial court utilizes a three-step process to divide the parties' property: "(1) the trial court first characterizes each item of property as marital or nonmarital; (2) the trial court then assigns each party's nonmarital property to that party; and (3) finally, the trial court equitably divides the marital property between the parties." "An item of property will often consist of both nonmarital and marital components, and when this occurs, a trial court must determine the parties' separate nonmarital and marital shares or interests in the property on the basis of the evidence before the court." Neither title nor the form in which property is held determines the parties' interests in the property; rather, "Kentucky courts have typically applied the 'source of funds' rule to characterize property or to determine parties' nonmarital and marital interests in such property." "The 'source of funds rule' simply means that the character of the property, *i.e.*, whether it is marital, nonmarital, or both, is determined by the source of the funds used to acquire the property."

*Sexton*, 125 S.W.3d at 264–65 (footnotes omitted).

■ The *Sexton* Court went on to explain the concept of tracing as it applies in determining whether property, or some portion of it, is marital or nonmarital:

> "Tracing" is defined as "[t]he process of tracking property's ownership or characteristics from the time of its origin to the present." In the context of tracing nonmarital property, "[w]hen the original property claimed to be nonmarital is no longer owned, the nonmarital claimant must trace the previously owned property into a presently owned specific asset." The concept of tracing is judicially created and arises from KRS 403.190(3)'s presumption that all property acquired after the marriage is marital property unless shown to come within one of KRS 403.190(2)'s exceptions. A party claiming that property, or an interest therein, acquired during the marriage is nonmarital bears the burden of proof.

*Sexton*, 125 S.W.3d at 266 (footnotes omitted).

Because the property was purchased and the cabinet shop was built after their marriage in April 2001, it was James's burden to establish by clear and convincing evidence that the funds used to purchase the property and build the improvements were traced to his nonmarital assets. And, it is not Virginia's burden to establish that marital funds were used to purchase the property and improvements, although she did testify that this was the case. We have reviewed both the transcript of the final hearing as well as the documentary evidence presented and considered by the DRC, and we must agree with Virginia that the documentary evidence does not support James's claim that only his premarital assets were used to purchase the lot and build the cabinet shop.

James testified at the hearing that he cashed in a CD in April 2001 to pay Ms. Smith the down payment on the property and to pay the surveyor. He then withdrew money from his credit union account

to pay the rest. He claimed that all of the money he used to purchase the land and build the shop came from funds he had prior to the marriage. During the hearing, James's attorney referenced Exhibit A–3, which he described as a $10,000.00 withdrawal made shortly before the down payment was made in April 2001. However, Virginia points out that Exhibit A–3 actually shows a deposit of funds for the purchase of a CD, not the withdrawal of funds James's attorney stated. Exhibit B–4 shows the issuance of the $10,000.00 CD dated April 20, 2001, which had a maturity date of January 20, 2002. Exhibit B–5 shows the CD was cashed in on February 8, 2002, as evidenced by a cashier's check for $10,316.96. Also during the hearing, James's attorney referenced an April 2002 credit union cashier's check in the amount of approximately $8,000.00, introduced as Exhibit B–6, which he stated represented the remainder of the payment for the property. However, we agree with Virginia that this document is completely illegible. It does not show the date, the amount, or the payee. There is simply not enough information to match the illegible copy of the cashier's check to the $8,200.00 cashier's check issued on April 25, 2002, as shown in the credit union bank statement introduced as Exhibit B–8.

In addition to the above, none of the other documents James introduced at the hearing show the source of funds used to purchase the CDs referenced in the penalty calculator reports, or when the funds were withdrawn, or the source of funds to pay for the items delivered, including clips, two boxes of drip edge, and clay J-channels. Furthermore, the estimate from John Bentley Lumber was clearly for $3,660.90, not in excess of $36,000.00, as James claimed and the DRC stated in the findings of fact.

Accordingly, we must vacate the circuit court's order adopting the DRC's report and supplemental report and remand for reclassification of the parties' property as marital or nonmarital and for further findings in conformity with KRS 403.190.

Because we are vacating the classification of the property at issue, the circuit court must reassess the assignment of nonmarital property (if any may be established) as well as the division of marital property and debts. For the same reasons, the circuit court must also reassess Virginia's requests for maintenance and attorney fees. Therefore, we shall not consider Virginia's arguments related to responsibility for the increased indebtedness on the residence, maintenance, and attorney fees.

■ However, we shall consider Virginia's argument related to the payment of $4,215.00 for medical, or dental, expenses. Virginia requested that she be reimbursed for expenses she incurred for injuries she received during an altercation with James. The DRC noted that Virginia "offered a bill, but offered no proof that those injuries were actually those sustained in said altercation. She only acknowledged she had made payment through a credit card, but none was produced to show any payment or that it was for those particular expenses." The record does not reflect that Virginia offered any documentary proof to support this assertion or to tie the claimed expenses to her earlier altercation with James. Therefore, we do not find any error or abuse of discretion in the decision not to reimburse Virginia for the claimed expenses.

For the foregoing reasons, the order confirming the DRC's report and supplemental report is affirmed insofar as it denies Virginia's request for medical expenses, but it is vacated as to the remainder of the issues raised on appeal.

This matter is hereby remanded to the Boyd Circuit Court for further proceedings in accordance with this opinion.

ALL CONCUR.