RENDERED: JANUARY 24, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1142-MR

MICHAEL SCOTT ADKINS                                         APPELLANT

APPEAL FROM MORGAN FAMILY COURT
v.       HONORABLE JENIFFER BARKER NEICE, JUDGE
ACTION NO. 22-CI-00132

ALLISON THOMAS ADKINS                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND ECKERLE, JUDGES.

CALDWELL, JUDGE: Michael Scott Adkins ("Michael") appeals from the

Morgan Family Court's resolution of property issues following Michael's divorce

from Allison Thomas Adkins ("Allison"). We affirm.

## FACTS

Michael and Allison married in April 2022. In December 2022, the

Morgan Family Court entered a decree dissolving the Adkins' marriage but

reserving property issues for later determination. A few months later, the family court conducted an evidentiary hearing and then took the matter under advisement. Both parties submitted proposed findings of fact and conclusions of law. The family court entered its Final Order, Findings of Fact, and Conclusions of Law ("Judgment") several weeks later.

The family court found Michael resided in Kentucky, but Allison had primarily lived in Tennessee except for living in Kentucky for a few weeks during the marriage. It further found Allison reported earning about $23,000 per month as a nurse anesthetist while Michael reported earning $3,000 to $5,000 per month as a self-employed contractor and evangelist.

The family court also found the parties had only lived together for a few weeks after their marriage. It found that Allison initially came to live in Michael's house and attempted to work in Kentucky. It noted that Allison testified to Michael taking away her keys and refusing to allow her to leave the house on one occasion in May 2022. It also noted Allison's testimony that she felt afraid and did not report the incident because she did not think anyone would believe that a preacher would treat someone like that.

The family court found that after this May 2022 incident, the parties did not live together consistently for the rest of their marriage although they saw each other occasionally. The family court also found the parties separated in

September 2022, when Allison filed a petition for an emergency protective order ("EPO") alleging that Michael grabbed her arm and would not let her leave the premises.[1]  The family court noted the EPO was granted.

The family court found that during the parties' brief marriage, Michael earned little to no income.  It found Allison earned most, if not all, of the income during the marriage.  It also found that Allison often paid for equipment and other expenses for a tow truck business and Michael's other business ventures.  It found the tow truck business venture and partnership interest was formed after the marriage, although the tow truck (also called a "rollback truck") was purchased before the marriage.  (It noted Michael testified to buying the truck but found that Allison paid $20,000 for the truck's purchase.)  It noted Allison's testimony that she saw little return for her investments.

The family court also found that Allison bought a recreational vehicle and farm equipment during the marriage and mortgaged her properties in Tennessee to raise funds to buy two farms originally belonging to Michael's family.  The family court found that Michael had inherited a 1/6 interest in the two

---

[1] The Judgment referred to the petition for an EPO and the parties' separation as occurring in September 2023 in a couple of places.  However, as the Judgment was entered in late August 2023, all references to the EPO petition and separation having previously occurred in September 2023 were obviously typographical errors.

farms when Michael's father died shortly before the parties' marriage and that the two farms were sold at a public auction in July 2022 (during the marriage).

The family court noted that Michael testified to not telling family members about his marriage to Allison and to having Allison bid against him at the auction to drive up the price so he could buy the farms instead of his siblings. The family court found the two farms were purchased for $803,000.00 (including the auctioneer's fees) despite Michael's stating that "the property" was only worth about $250,000.00 in a pretrial disclosure.[2]

The family court's judgment also stated: "it was clear from the testimony of all witnesses that all actual funds used to purchase the properties were the non-marital funds of the Respondent [Allison] with a credit of $90,000 applied to the purchase price representing a portion of the Petitioner's [Michael's] inheritance."

The family court noted that Allison testified to hoping the parties could build a life together on the farms and that Michael testified to believing Allison wanted to buy the farms as a gift for him. The family court did not find

_____

[2] Michael believed the Jones Branch farm was worth $250,000 and the Redwine Branch farm was worth $40,000 according to a pretrial disclosure. The Redwine Branch farm purchase price was $49,500.00 according to the deed. Most of the $803,000.00 total purchase price (including auctioneer's fees) for the two farms stemmed from the $753,500.00 purchase price on the Jones Branch farm. (Apparently, the purchase price on each farm stated in the deeds included the auctioneer's fees since the winning auction bids on the Jones Branch and Redwine Hill farms were $685,000.00 and $45,000.00, respectively.)

Michael's testimony to be credible, however. It noted Allison's testimony that she did not intend to give Michael the farms, since the property she mortgaged to buy the farms represented her life savings. The family court stated it did not believe that Allison intended to mortgage most of the real estate she had acquired in her life to give the farms to her husband of just a few months at that time.

It also noted that Michael admitted to cashing a check for $30,600.00 from the auction company which had been written to both parties and which Allison never endorsed. It also found Michael admitted that the $30,600.00 which was returned came from Allison's non-marital funds.

The family court also noted the testimony of the auctioneer that the checks for downpayments on the farms were returned for insufficient funds. And it found this to be explained by Allison's testimony that she had stopped payment on the checks because she did not want to go through with the sale. The family court also noted the auctioneer's testimony that purchase funds were eventually transferred by wire and that the auctioneer stated he had no reason to believe that Allison was buying the farms as a gift for Michael.

The family court noted Allison's testimony to being "in a fog" during the marriage and to Michael constantly demanding that she spend money and threatening that Allison would go to jail if she did not go through with buying the farms. The family court found Allison testified to borrowing $592,800.00 by

mortgaging her properties in Tennessee and to taking out an unsecured note for $188,000.00 to enable her to pay for the two farms. (Michael also signed the unsecured note for $188,000.00 based on our review of the written record.) The family court also found Allison testified to selling property in Alabama to obtain cash for Michael's business ventures.

The family court noted Allison testified to perceiving that she had lost about one million dollars due to Michael's actions. It also noted that Allison testified that even if she were awarded all property acquired in the marriage, she would not be made whole. But the family court noted its duty was not to make the parties whole but instead to equitably divide marital assets and debts after first assigning each party his/her non-marital property.

In its conclusions of law, the family court recognized it must determine whether various items of real or personal property were marital or non-marital before it assigned non-marital property and divided marital property. It concluded most personal property items at issue were marital assets. It also concluded the most valuable properties acquired during the marriage were the two farms which had been purchased during the marriage with Allison's non-marital funds "less $90,000 contributed by" Michael. The family court rejected Michael's arguments that Allison bought the farms as a gift for Michael and found it unnecessary to address Allison's arguments of undue influence. The family court

noted that Michael argued that the form of title in the deeds should affect the disposition of the property (though it did not expressly discuss the form of title conveyed in the deeds as being a tenancy in common), but the family court concluded the form of title in the deeds was not controlling or determinative according to precedent.

The family court then addressed the issue of whether the farms were marital or non-marital. And while the family court, arguably, concluded the farms were mostly or entirely Allison's non-marital property, it further found the debt incurred to purchase the farms to be marital. The family court assigned the $592,800.00 debt secured against Allison's non-marital real estate to Allison. It assigned the $188,000.00 unsecured note to Michael, stating it did so due to the financial condition he placed Allison in and in consideration of personal property items awarded to him.

The family court awarded Michael the "rollback" truck and all partnership assets associated with the vehicle towing business. It noted that Allison had paid $20,000.00 for the truck prior to the marriage and that the towing business venture and partnership developed after the marriage. The family court concluded the truck and all partnership assets were marital assets and stated these assets would offset any remaining amount of Michael's $121,043.03 inheritance.

The family court also found a tractor previously resold by Allison to have been a marital asset. Noting Allison's testimony that she sold the tractor at a $15,000.00 loss, the family court ordered Michael to pay Allison $7,500.00 to compensate her for her loss.

Lastly, the family court found various other assets to be marital in nature and ordered that they be sold with the proceeds to be equally divided between the parties. These marital assets included a recreational vehicle, a hauling trailer, a Skid Steer, palletized inventory, and two shipping containers.

Michael filed a timely appeal. He argues that the family court adopted Allison's proposed findings of fact and conclusions of law and failed to exercise its own independent judgment. He also claims the family court failed to assign Michael's non-marital property to him, made a clearly erroneous finding that Allison did not purchase the farms and/or tractor as gifts for Michael, and abused its discretion in assigning the $188,000.00 debt to him. Despite these arguments, we discern no reversible error in the family court's resolution of the parties' property disputes.

# ANALYSIS

## Standards of Review[3]

---

[3] Allison does not dispute Michael's assertions that all issues raised upon appeal were properly preserved for our review. And we perceive that many of the issues raised upon appeal were also raised to the family court based upon our review of the record. So, we review appellate issues under generally applicable standards of review.

However, for future reference, we strongly encourage Michael's counsel to provide in appellant briefs proper preservation statements identifying if and how issues were raised to a trial court with specific citations to the record, *see* Kentucky Rules of Appellate Procedure ("RAP") 32(A)(4), rather than simply asserting that everything was preserved because a judgment was rendered after a trial.

Certainly, in some instances it is not necessary to object or to file a post-trial motion to alter, amend or vacate to preserve certain issues for appeal such as the sufficiency of the evidence to support factual findings. *See* Kentucky Rules of Civil Procedure ("CR") 52.03. But while it might not be strictly necessary to object or file a post-trial motion to preserve certain issues, an appellant should still state whether an issue was raised to the trial court and if so, provide specific supporting citations to the record to make sure that the appellate court "can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration." *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012). Furthermore, failure to provide a proper preservation statement with specific citations to the record can result in issues being treated as unpreserved and therefore reviewed solely for palpable error resulting in manifest injustice rather than applying otherwise applicable standards of review. *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021). *See also* CR 61.02.

(Though *Oakley* and *Ford* were rendered prior to the adoption of Kentucky's Rules of Appellate Procedure in January 2023, they applied substantially similar appellate briefing rules in former Kentucky Rules of Civil Procedure and their reasoning remains sound.)

In sum, it is more appropriate to identify if and how one argued to the trial court issues raised on appeal (such as here whether assets were conveyed as gifts or whether an asset was marital or non-marital in nature) with citations to the record rather than to generally assert all such issues were preserved simply because a trial occurred.

The Rules of Appellate Procedure and other helpful resources such as appellate briefing checklists and our basic appellate handbook may be accessed from our court website, https://www.kycourts.gov/Courts/Court-of-Appeals/Pages/default.aspx (last accessed Jan. 10, 2025).

We review the family court's factual findings for clear error, meaning we cannot disturb such factual findings unless they are not supported by substantial evidence. And we must defer to the family court's assessments of witness credibility and weighing of the evidence. *McVicker v. McVicker*, 461 S.W.3d 404, 416 (Ky. App. 2015).

Though we review factual findings for clear error, we review the family court's division of marital assets for abuse of discretion. *Id.* Similarly, we review its division of marital debt for abuse of discretion. *Maclean v. Middleton*, 419 S.W.3d 755, 773 (Ky. App. 2014).

However, we review the family court's conclusions of law *de novo*. *Id.* at 763. Specifically, we review the family court's application of the law to classify property as marital or non-marital *de novo*. *McVicker*, 461 S.W.3d at 416.

**No Reversible Error in Family Court's Assignment of Non-Marital Property and Award or Assignment of the Farms to Allison**

Under KRS[4] 403.190, the family court must first characterize property items as either marital or non-marital and then assign each party their non-marital property before equitably dividing the marital property. *McVicker*, 461 S.W.3d at 416-17 (citing *Sexton v. Sexton*, 125 S.W.3d 258, 264-65 (Ky. 2004)).

---

[4] Kentucky Revised Statutes.

-10-

Michael asserts that the family court failed to assign him his non-marital property and even assigned his non-marital, inherited interest in the two farms to Allison. He contends that despite the family court's finding Michael's testimony to not be credible, that no one disputes that Michael had inherited a one-sixth interest in the two farms before these farms were auctioned off.

Despite these arguments, the family court explicitly noted Michael had inherited a one-sixth interest in the two farms prior to the marriage in its findings of fact. But it also found that all out-of-pocket funds used to purchase the farms were Allison's non-marital funds though Michael would receive a $90,000.00 credit for a portion of Michael's inheritance. It also took note of Michael's admitting to cashing a check to both parties for $30,600.00 and keeping these funds for himself in his testimony. (Apparently, the family court deducted the $30,600.00 from Michael's estimation of the value of his inheritance from his father at approximately $121,000.00 to accord him a net credit for $90,000.00.)

Despite making these findings about how each party contributed to the parties' obtaining title to both farms during their marriage, the family court did not very clearly state whether the farms were marital property, non-marital property, or a combination of marital and non-marital property. *See Smith v. Smith*, 235 S.W.3d 1, 5 (Ky. App. 2006) ("[S]ome property may have both marital and nonmarital components by virtue of the fact that it was purchased with a

combination of marital and nonmarital funds."). The family court failed to explicitly do what it recognized it must do first – *i.e.*, determine whether all properties were marital or non-marital or a combination of both before assigning all non-marital property and dividing the marital estate. Nonetheless, any error in failing to clearly state whether the property was marital or non-marital or a combination thereof is harmless based upon our review of the record and applicable law. *See* CR 61.01 (Courts must ignore errors which do not impact parties' substantial rights and should not disturb judgments unless not doing so would be "inconsistent with substantial justice.").

Despite failing to forthrightly determine whether the farms were marital or non-marital property or a combination thereof, the family court nonetheless discussed Kentucky precedent calling for considering the source of the funds when determining whether property is marital or non-marital or a combination thereof. *See Crawford v. Crawford*, 358 S.W.3d 16, 21 (Ky. App. 2011) (property acquired during marriage is presumably marital, but the presumption is overcome if the party claiming the property is non-marital meets the burden of proving that the funds used to acquire the property are traced to his/her non-marital assets).

The family court found that all out-of-pocket funds used to purchase the farms could be traced to Allison's non-marital assets. And it stated that to the

-12-

extent that Allison's non-marital funds paid for the farms, these properties were Allison's non-marital property. But the family court also determined that Michael had contributed about 11% of the purchase price (apparently through inheritance), but that his "11% equity" was "absorbed" by the difference between the purchase price and the value of the property as stated by Michael.

The language of the family court's conclusions may lead to different interpretations. Perhaps the family court's conclusions of law could be read as indicating the farms were 89% Allison's non-marital property and 11% Michael's non-marital property. On the other hand, the conclusions of law could also be read as indicating that Michael's prior, inherited non-marital interest in the farms no longer existed – especially as the family court stated his 11% equity was absorbed due to the inflated purchase price. Obviously, the family court viewed the farms as predominantly, if not entirely, Allison's non-marital property.

Certainly, there is a valid argument that the family court should have viewed the farms as marital property. Even though the family court did not believe Michael's testimony that the farms were purchased as a gift for him, Allison's testimony that she had hoped for the parties to make a life on the farms together suggests she was not buying property solely for herself. Furthermore, property acquired during a marriage is generally presumed to be marital subject to certain exceptions. *See* KRS 403.190(2)-(3). (However, neither party argues the farms

-13-

were marital property in their respective appellate briefs. And Michael simply argues the farms were *his* non-marital property by inheritance and/or gift.)

However, the legally supported argument for the properties being marital is that since Allison only mortgaged, and did not sell, her non-marital real properties to raise funds for the purchase of the farms, the funds to acquire the farms were not non-marital but marital. *See* KRS 403.190(2)(b) (defining non-marital property as including property acquired after the marriage if the property was "acquired in *exchange* for property acquired before the marriage").

But even if the farms were determined to be marital or predominantly marital in nature, the family court would not be obligated to divide them evenly – but simply in just proportions. KRS 403.190(1); *Smith*, 235 S.W.3d at 6.

Furthermore, we do not perceive that the family court was obligated to award the entirety of both farms to Michael despite Michael having previously inherited a partial interest in these farms before he and Allison purchased and obtained title to the farms during their marriage. Though Michael argues in his brief that the farms were his non-marital property by inheritance, he indisputably did not inherit the entirety of both farms but simply a one-sixth interest in each.

Despite Michael having inherited a one-sixth interest in both farms before he and Allison purchased both farms during the marriage, we are aware of no controlling authority requiring that the entirety of both farms be assigned to him

-14-

as his non-marital property based on his partial inherited interest.  And the family court's finding that the purchase price was so much higher than the farms' undisputed real value according to Michael[5] that Michael's premarital one-sixth interest had been subsumed is not clearly erroneous.

To the extent the family court may have determined the farms were solely Allison's non-marital property, it had to assign the farms to Allison under KRS 403.190(1).  However, even if the family court explicitly found the farms to be marital property, we would discern no abuse of discretion in awarding the farms to Allison, especially since it awarded other marital assets (including the tow truck business assets) to Michael.  And, to the extent the family court found that the farms were originally 89% the non-marital property of Allison and 11% the non-marital property of Michael, it also found that Michael's non-marital interest had essentially disappeared due to the inflated purchase price and resulting debt.  These factual findings, underlying its determination that Michael's non-marital interest

---

[5] No one has raised any questions about Michael's estimation of the farms' value.  Precedent from this Court indicates an owner's uncontradicted testimony about real property's value can be sufficient to support a trial court's valuation of that property based on the uncontradicted testimony.  *See Turley v. Turley*, 562 S.W.2d 665, 667 (Ky. App. 1978) (affirming trial court's finding of the value of property co-owned by the divorcing parties based on one party's uncontradicted testimony as not clearly erroneous).  Other precedent suggests that an owner may not be qualified to express an opinion about the value of real property based solely on his/her ownership but must have knowledge of market values to be qualified to express such opinions of value.  *See, e.g.*, *Commonwealth, Dep't of Highways v. Fister*, 373 S.W.2d 720, 722-23 (Ky. 1963).  However, Michael's testimony about the farms' value was uncontradicted and no one has claimed he lacked knowledge of market values.  Thus, the family court's finding that the purchase price for the farms was much higher than fair market value was not clearly erroneous.

-15-

was no longer in existence, are not clearly erroneous. And we are not aware of any controlling authority forbidding a court from determining that a prior non-marital interest no longer existed under similar facts.[6] Therefore, we discern no reversible error in the family court's awarding or assigning the farms to Allison under the facts here.

Next, we address Michael's argument that the family court's finding that Allison did not intend to give the farms to Michael is clearly erroneous.

**Family Court Finding of No Donative Intent is Not Clearly Erroneous**

---

[6] Allison cites for our consideration *Hadley v. Hadley*, No. 2010-CA-000105-MR, 2011 WL 5105378, (Ky. App. Oct. 28, 2011) (unpublished) in which we stated:

> The undisputed evidence in this case establishes that at the time of the parties' marriage in February 1998, the farm property was encumbered by a mortgage that exceeded its value. No evidence was introduced to indicate that Douglas made any non-marital contribution to the property thereafter. Under these circumstances, the provisions of KRS 403.190(3) create a presumption that the disputed property is marital. Consequently, we must conclude that the trial court erred by assigning any portion of the farms property's equity to Douglas as his non-marital property. We vacate on this issue and remand for the trial court to distribute the marital property between the parties in just proportions.

*Id*. at *3. This unpublished opinion is not binding authority, however. RAP 41(A). Furthermore, the facts in *Hadley* are quite different from this case since the property at issue was already encumbered by a mortgage exceeding the property's fair market value at the time of the Hadleys' marriage. In contrast, though Allison mortgaged her other (non-marital) properties to buy the farms during the marriage, the farms themselves were not mortgaged. In sum, *Hadley* neither clearly forbids the family court's determination that Michael's prior non-marital inherited interest ceased to exist under the facts here nor does it clearly support this determination.

Though we elect to impose no sanctions, we remind Allison's counsel that RAP 41(A)(4) requires an accompanying statement "that the opinion is not binding authority" when citing for consideration unpublished opinions of Kentucky appellate courts.

Michael claims the family court erred in finding his testimony less credible than Allison's and in its findings that Allison did not intend to give Michael assets including the farms and the tractor.[7] He claims the family court should have found Allison's testimony not credible and asserts her testimony about not intending to give Michael assets is illogical – pointing out Allison admitted to not being able to drive the tractor, for example, and asserting that means she could only have intended to buy the tractor as a gift. But the family court noted Allison testified to buying the tractor to maintain the farm, in addition to noting Allison's testimony about hoping the parties could make a life on the farm together.

In arguing that Allison's testimony should have been rejected as illogical or uncredible, Michael cites precedent about when a witness's testimony can properly be disregarded as impossible and contrary to "well-established and universally recognized physical laws." *See Ross v. Commonwealth*, 531 S.W.3d 471, 476 (Ky. 2017) (quoting *Louisville & N.R. Co. v. Chambers*, 165 Ky. 703, 178 S.W. 1041, 1042-43 (1915)). However, Michael fails to point to any testimony of Allison's which asserts the occurrence of any events which are impossible and contrary to the laws of physics.

---

[7] The gift argument in Michael's appellant red brief mainly focuses on the farms, as Michael argues the family court made a clearly erroneous factual finding of no donative intent regarding the other 5/6 of the real properties (meaning the farms). However, Michael also mentions Allison's buying the tractor a couple of months after the farms in his gift argument. He contends the tractor was a gift from Allison to Michael, despite the family court finding the tractor was a marital asset.

-17-

Furthermore, Kentucky law clearly requires that appellate courts should not discount a family court's credibility assessments but instead must recognize the fact-finding court's unique opportunity to assess witness credibility. *See* CR 52.01 ("due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses"); *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) ("[J]udging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court.").

Similarly, the family court's factual findings – including those about donative intent – can only be set aside if clearly erroneous, meaning not supported by substantial evidence. *Id.*; CR 52.01. *See also Sexton*, 125 S.W.3d at 269 (noting questions of donative intent can be resolved based on testimony and other facts and circumstances and stating: "The determination of whether a gift was jointly or individually made is a factual issue, and therefore, subject to the CR 52.01's clearly erroneous standard of review.").

The family court stated the only evidence that might indicate Allison intended to give Michael the farms was Michael's testimony, which the family court did not find credible. Though not explicitly addressed in the argument section of his appellant brief, Michael suggests in his statement of facts that the family court erroneously failed to consider evidence about the form of title in the deeds (tenancy in common). But the family court noted Michael's argument about

the form of title affecting ownership and the court's power to resolve property issues in its conclusions of law. And it cited binding precedent holding that record title does not control or determine whether there was an intention to gift property to a particular individual. *See Sexton*, 125 S.W.3d at 268-69. (The family court cited *Sexton*, 125 S.W.3d at 258, at page 18 of its judgment albeit with no pinpoint citation.) So, the family court did not err in noting the form of title argument but not finding that Allison intended to give the farms to Michael based on the form of title in the deeds.

In finding that Allison did not intend to give Michael the farms, the family court's judgment noted Allison's testimony about not intending to give the farms to Michael and assessed other relevant factors:

> The parties had only been married for approximately three months at the time of the auction, they were not living together as man and wife at the time, the source of the funds was largely stipulated as being non-marital, and that there was no credible evidence that the Respondent [Allison] intended the farms to be a gift.

So, in addition to considering Allison's testimony about her intent in buying assets such as the farms and the tractor, the family court properly considered other factors relevant to determining whether these purchases were gifts to Michael – including the source of the funds and the state of the marriage. *See O'Neill v. O'Neill*, 600 S.W.2d 493, 495 (Ky. App. 1980). (Neither party points to any evidence of an agreement between the parties about whether "the transferred

-19-

property was to be excluded from the marital property" so the family court did not discuss that factor. *See id.*)

Despite Michael's arguing some reasons[8] why another factfinder could assess credibility differently or find that Allison intended to give the farm or tractor to Michael, we cannot disturb the family court's credibility assessments or factual findings on donative intent under the deferential standard of review we must apply. The family court's factual findings on donative intent are supported by substantial evidence and reflect consideration of relevant factors based on our review of the record. And we must extend "due regard" to the family court's unique opportunity to determine witness credibility. CR 52.01. In short, we discern no reversible error in the family court's credibility assessments or factual findings on donative intent.

**No Abuse of Discretion in Assigning $188,000.00 in Debt to Michael**

Michael contends the family court abused its discretion in assigning $188,000.00 in marital debt to him. He asserts in the argument portion of his brief that the family court awarded "all the property" including "all of the marital

---

[8] Michael points out various instances in the hearing recording in which the family court judge asked questions or made oral comments which might be interpreted as critical of Allison and her testimony. But ultimately the family court speaks through its written judgment, not any inconsistent oral comments. *See., e.g., J.L.R. v. A.L.A.*, 645 S.W.3d 63, 69 (Ky. App. 2022). Furthermore, though the family court may have occasionally intervened to remind Allison to focus on answering questions rather than asking the attorneys questions, for example, such instances do not necessarily reflect on the credibility of the content of her testimony but may simply reflect the court providing direction on proper courtroom protocol and procedure.

property" and Michael's inherited interest in the farms to Allison. To the extent that Michael's appellant brief states that Allison received all property (including all property determined to be marital), this is incorrect and contrary to the record. The family court explicitly awarded to Michael the rollback truck and all partnership interests in the towing business – and stated these assets would offset his inherited interest in the farms valued at $121,043.03.[9]

The family court also ordered that several items of personal property determined to be marital assets should be sold and the proceeds divided equally between the parties. (Neither party has challenged the family court's ordering the sale of these assets with the proceeds to be divided equally between the parties.)

In short, while Michael may not be satisfied with the family court's property disposition, Allison did not receive all the property in the family court's

---

[9] Though the family court found that Allison had paid $20,000.00 to buy the rollback truck before the marriage, it did not find any portion of the rollback truck to be Allison's non-marital property. But Allison has not filed a cross-appeal or argued any error in the family court's finding the rollback truck to be a marital asset and awarding it to Michael.

It also may seem curious to some that the family court awarded the rollback truck and associated towing business assets (which it deemed marital assets) to Michael and stated the award of these marital assets was offset by Michael's inherited interest in the farms (which was, at least prior to the couple's purchase of the farms at auction, a non-marital asset). However, the parties have not expressly argued such an issue. We are unaware of any authority expressly permitting a family court to offset marital assets against non-marital assets. Nonetheless, the family court could properly consider the value of non-marital property assigned to each party, among other circumstances, in dividing the marital property in just proportions. *See* KRS 403.190(1)(b). We also note that neither party clearly argued in their briefs whether a debt incurred to buy property later deemed predominantly or entirely non-marital could properly be considered a marital debt.

judgment and Michael did not receive nothing. Instead, Michael was awarded some marital assets and would equally share in the proceeds from selling other valuable marital assets including vehicles, equipment, and business inventory.

In addition to his spurious arguments of receiving nothing at all, Michael argues that the family court failed to adequately consider his economic circumstances, *see* KRS 403.190(1)(d), including his perception that "all his land has been given away [to Allison], even the one place where he can live . . . ."

Michael asserts the family court failed to properly follow legal authority and improperly tried to rescue a competent adult who perhaps made questionable decisions due to falling in love. Michael also points out Allison merely mortgaged her real estate in Tennessee and states he was not even required to sign these mortgage documents. He also claims Allison alone incurred the debts to buy the farms. (However, the $188,000.00 unsecured note was also signed by Michael based on our review of the written record. Record on Appeal, page 332.)

Michael concedes the debts incurred were not used to support the family but argues it is not fair to make him pay off the $188,000.00 debt since Allison's earnings greatly exceed his earnings. He contends there is no reason he should be assigned any debt and that he should receive his one-sixth of the real estate (the farms). In summary, he argues it was wrong for the family court to rule

against him on the dispute about whether assets were bought as gifts, to assign his non-marital property to Allison, and to also assign debt to him.

In response, Allison argues there was no real equity in the farms to assign because the purchase price of the farms so greatly exceeds the real value of the property as stated by Michael. She contends that the debts incurred to acquire the farms greatly exceed the value of the farms. But Michael points out there were no liens on the farms themselves.

Allison points out that while $188,000.00 in debt was assigned to Michael, she was assigned $592,800.00 in debt. She admits the family court awarded her about $300,000.00 of collateral in the farms. She also points out Michael received the rollback truck (for which Allison contributed $20,000) – so Allison argues she had net debt assigned of $292,800.00 while Michael had $168,000.00 of net debt assigned to him. Allison also points out she incurred a $15,000.00 loss in selling the tractor – though we note the family court ordered Michael to pay Allison back $7,500.00 for the tractor-related loss.

Though not discussed by the parties' briefs, both Michael and Allison will likely receive substantial funds when other assets are sold – in addition to Michael being awarded the rollback truck and other towing business assets. And despite Michael's argument that the family court was treating Allison like an

incompetent elderly person and not holding her responsible for her own actions, Allison was assigned over three-quarters of the debt incurred to buy the farms.

In sum, regardless of whether we or another court would have made the same decision, we discern no abuse of discretion in the family court's assigning $188,000.00 debt to Michael based on the record before us and applicable law.

**No Reversible Error in Family Court's Adopting Many of Allison's Proposed Findings of Fact and Conclusions of Law**

In addition to specifically challenging the family court's characterization of and disposition of various assets and debts, Michael also claims the family court failed to independently exercise its own judgment in adopting the bulk of Allison's proposed findings of fact and conclusions of law and order. Nonetheless, Michael points out many differences between Allison's proposed judgment and the family court's judgment, though Michael suggests the family court's changes were insubstantial and simply removed some language suggesting animosity. He also points out the judgment entered retains the same misspelling of the family court judge's name in the print underlying the signature line as in Allison's proposed judgment. In his brief Michael claims the family court delegated its decision-making authority and argues: "Taking out the animosity but adopting all other language is not enough."

Even though the family court adopted many of Allison's proposed findings of fact and conclusions of law and even failed to correct the spelling of the

-24-

judge's name under the signature line,[10] we discern no reversible error here. Certainly, some precedent from this Court indicates that an almost verbatim adoption of a party's proposed findings of fact and conclusions of law is disfavored and may amount to reversible error in certain contexts – such as in child custody cases. *See Retherford v. Monday*, 500 S.W.3d 229, 232 (Ky. App. 2016). But more recent precedent from this Court makes clear that even verbatim adoption of proposed findings and conclusions does not necessarily amount to reversible error. *See Keith v. Keith*, 556 S.W.3d 10, 14 (Ky. App. 2018) ("To the extent that *Retherford* holds that adoption of tendered findings is automatically grounds for reversal, this holding conflicts with directly controlling precedent from our Supreme Court."). As we noted in *Keith*, binding precedent from our Supreme Court holds that an appellate court should not disturb a lower court's adoption of a party's proposed findings and conclusions if such findings and conclusions still reflect the deliberations of a judge who retained control over the decision-making process. *Id*. at 13-14 (citing *Bingham v. Bingham*, 628 S.W.2d 628, 628-30 (Ky. 1982); *Prater v. Cabinet for Human Resources*, 954 S.W.2d 954, 956 (Ky. 1997)).

---

[10] Although it was odd that the family court's judgment retained the misspelling of the judge's name under the signature line used in Allison's proposed judgment, the misspelling of the judge's name in the signature line does not affect the parties' substantial rights so clearly any error in this regard is harmless. CR 61.01.

Contrary to Michael's arguments, the family court's judgment substantially differed from Allison's proposed judgment. For example, Allison's proposed judgment indicated Allison should be awarded the palletized inventory, two shipping containers, the recreational vehicle, the hauling trailer, and the Skid Steer. However, the family court's judgment ordered that these aforementioned items of personal property must be sold with the proceeds divided equally between the parties – thus, it effectively awarded each party half of these assets rather than awarding all these assets to Allison as Allison proposed doing.

Furthermore, despite some similarities to Allison's proposed judgment, the family court's judgment does not reflect a lack of deliberation or delegation of its decision-making authority based on our review of the record. The family court asked both parties many questions during the hearing and it carefully considered the evidence based on our review of the record. It also entered detailed findings of fact and conclusions of law which in some respects differ substantially from those proposed findings and conclusions tendered by Allison. In short, we reject Michael's argument that the family court failed to exercise its independent judgment despite the family court's adoption of many of Allison's proposed findings and conclusions.

Further arguments in the parties' briefs have been determined to lack merit or relevancy to our resolution of the appeal.

**CONCLUSION**

For the foregoing reasons, we AFFIRM.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Thomas P. Jones
Beattyville, Kentucky

BRIEF FOR APPELLEE:

Daniel Frederick
West Liberty, Kentucky