v.

**COMMONWEALTH of Kentucky, CABINET FOR HEALTH AND FAMILY SERVICES; A.T.P.; and A.P. (A Juvenile), Appellees**

**NO. 2014–CA–000320–ME; NO. 2014–CA–000321–ME; NO. 2014–CA–000322–ME; AND NO. 2014–CA–000323–ME**

Court of Appeals of Kentucky.

RENDERED: JANUARY 16, 2015; 10:00 A.M.

Modified and Ordered Published February 13, 2015

BRIEF FOR APPELLANT: Max H. Comley, Frankfort, Kentucky

BRIEF FOR APPELLEE: Jerry M. Lovitt, Lexington, Kentucky

1. Kentucky Revised Statutes.

2. KRS 600.020(19) defines a "dependent child" as "any child, other than an abused or

BEFORE: MAZE, NICKELL, AND STUMBO, JUDGES.

## OPINION

MAZE, JUDGE:

These appeals arise from the termination of Appellant's parental rights to her four children. Appellant contends that the trial court lacked substantial evidence to support termination of her parental rights under KRS[1] 625.090. However, finding no clear error, we affirm.

### Background

On July 12, 2013, the Cabinet for Health and Family Services (hereinafter "the Cabinet") filed Petitions for Involuntary Termination of Appellant's parental rights to her four children. At the time, the children ranged in age from five to nine years old. The family has a history of involvement with the Cabinet dating back to 2006. Since that time, the Cabinet has investigated several allegations of neglect or abuse, both substantiated and unsubstantiated. Substantiated claims included those for domestic violence between Appellant and her then-husband in the presence of the children and unsatisfactory living conditions in the home. In 2010, one such allegation resulted in Appellant's stipulation to neglect.

In 2012, due to both parents' failure to progress in their case plans with the Cabinet, and due to Appellant's failure to assess the risk her husband posed to her children, the Cabinet filed dependency petitions regarding the four children. The Cabinet removed the children from Appellant's home, and on September 24, 2012, the trial court found the children to be dependent.[2] Less than two months later,

neglected child, who is under improper care, custody, control, or guardianship that is not due to an intentional act of the parent, guard-

at disposition of the case, the trial court committed the children to the custody of the Cabinet and waived prospective application of the "reasonable efforts" requirement of KRS 625.090(3). The Cabinet subsequently sought termination of both parents' parental rights.

Following father's agreement to terminate his parental rights, the termination case concerning Appellant proceeded to a November 14, 2013 trial. At trial, several witnesses testified. Aimee Mau testified regarding the family's involvement with the Comprehensive Assessment and Training Services ("CATS") project pursuant to a prior court order. Mau testified that a CATS assessment of the family showed Appellant to have a poor attitude regarding her mental health issues and her resulting inability to parent and provide for her children. Mau testified to the mental health of the children, including the fact that the eldest child had been hospitalized for various troubling disclosures, including suicidal ideations. Additionally, Mau testified to Appellant's history of abusive partners and her inability or unwillingness to address the risk those relationships posed to the physical and mental well-being of her children.

Allison Hines, an on-going worker with the Cabinet who exercised case responsibility between 2009 and 2012, also testified to the circumstances of Appellant's prior neglect and dependency adjudications. Hines testified that, during this three-year period, Appellant signed several case plans agreeing to maintain stable housing, maintain stable employment, maintain medical care for the children, prevent her abusive husband from residing in the home, and

properly provide for the nutritional and educational needs of her children. Hines testified that Appellant failed to comply with the various case plans, and in the case of some conditions, she failed to do so repeatedly. Regarding stable housing, Hines testified that during one twelve month period, Appellant moved seven times.

In concluding her testimony, Hines stated that Appellant had failed to provide for her children for a period of six months or longer and that there was no prospect for improvement. This included the accrual of a substantial arrearage in Appellant's child support obligation to the state for the care of her children. Hines stated that when she transferred case responsibility in late 2012, reunification remained impossible due to Appellant's lack of improvement in several areas key to her ability to parent her children.

Appellant also testified. She had recently divorced the children's father and remarried; however, she admitted to having been in at least two abusive relationships, including her marriage to father, while caring for her children. Appellant confirmed that she was diagnosed with depression and stated that she sought treatment for that condition after the Cabinet removed her children from her home in 2012. Appellant admitted that she had moved residences "a lot" and had five jobs between 2012 and the hearing.[3] She testified that her child support arrearage reached more than $2,300 in January of 2013 before she paid it down; however, an arrearage remained as of the date of the termination hearing. Appellant admitted being the subject of multiple substantiated

---

ian, or person exercising custodial control or supervision of the child[.]"

**3.** Appellant specifically testified that her three previous jobs lasted one month, two months,

and a month-and-a-half, respectively. Beyond that, she could not remember where she had worked or the duration of her time with each employer.

instances of neglect. Finally, Appellant testified that she had attempted to contact the Cabinet after removal of her children and that she had not seen her children since January 2013.

Following the hearing, Appellant filed a motion for directed verdict. After the parties briefed on this subject, the trial court entered an order denying Appellant's motion. The court also entered contemporaneous Findings of Fact and Conclusions of Law supporting its orders terminating Appellant's parental rights to her four children. Appellant now appeals from the trial court's Findings of Fact and Conclusions of Law.

## Standard of Review

■ In an appeal from an order terminating an individual's parental rights, we review the trial court's findings for clear error. *See M.E.C. v. Commonwealth, Cabinet for Health and Family Services,* 254 S.W.3d 846, 851 (Ky. App. 2008); *see also* CR [4] 52.01. "Hence, this Court's review is to determine whether the trial court's order was supported by substantial evidence on the record." *Id.* (citing *V.S. v. Commonwealth, Cabinet for Human Resources,* 706 S.W.2d 420, 424 (Ky. App. 1986)). "Substantial evidence" is that which is sufficient to induce conviction in the mind of a reasonable person. *Sherfey v. Sherfey,* 74 S.W.3d 777, 782 (Ky. App. 2002).

## Analysis

■ An individual's "parental rights can be involuntarily terminated only if there is clear and convincing evidence that it would be in the best interest of the child to do so." *Cabinet for Health and Family Services v. A.G.G.,* 190 S.W.3d 338, 342 (Ky.2006) (citing to KRS 625.090; *Santo-*

*sky v. Kramer,* 455 U.S. 745, 769–770, 102 S.Ct. 1388, 1403, 71 L.Ed.2d 599 (1982); *N.S. v. C & M.S.,* 642 S.W.2d 589, 591 (Ky. 1982)). Thus, Kentucky law requires a court to find that

(a) 1. The child has been adjudged to be an abused or neglected child, as defined in KRS 600.020(1), by a court of competent jurisdiction;

2. The child is found to be an abused or neglected child, as defined in KRS 600.020(1), by the Circuit Court in this proceeding; or

3. The parent has been convicted of a criminal charge relating to the physical or sexual abuse or neglect of any child and that physical or sexual abuse, neglect, or emotional injury to the child named on the present termination action is likely to occur if the parental rights are not terminated; and

(b) Termination would be in the best interest of the child.

KRS 625.090(1). The trial court must also find, by clear and convincing evidence, the existence of one or more of the factors listed in KRS 625.090(2), including:

. . .

(e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;

. . .

(g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the

4. Kentucky Rules of Civil Procedure.

child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child; [or]

. . .

(j) That the child has been in foster care under the responsibility of the cabinet for fifteen (15) of the most recent twenty-two (22) months preceding the filing of the petition to terminate parental rights.

Therefore, a trial court must make, at a minimum, three findings: That the child is, or has previously been adjudged to be, neglected or abused; that one or more of the factors of KRS 625.090(2) exists; and that termination is in the child's best interest. We address Appellant's contentions regarding all three findings.

### I. Prior Adjudications of Neglect and Dependency

Appellant first contends that the Cabinet failed to meet its statutory burden under KRS 625.090(a)(1) of showing that the trial court in this case, or another "court of competent jurisdiction[,]" had adjudged the children abused or neglected. She contends that this burden was unmet for several reasons, all of which are unpersuasive.

 Appellant first insinuates, but does not strongly argue, that the trial court's *sua sponte* decision to take judicial notice of its 2010 order finding the children to be neglected was inappropriate because neither party requested the court do so.[5]

However, it is a well-established principle that a trial court may take judicial notice of its own records and rulings, and of all matter patent on the face of such records, including all prior proceedings in the same case. *See Adkins v. Adkins,* 574 S.W.2d 898, 899 (Ky. App. 1978); *see also* KRE [6] 201. Furthermore, a court may take judicial notice of such records and rulings at its discretion, "whether requested or not." KRE 201(c). Hence, the trial court acted appropriately in taking judicial notice of its 2010 adjudication of neglect regarding the children in this case.

 Appellant next argues that because the trial court found the children "dependent" in 2012, its 2010 finding that they were neglected could not form a basis for termination under KRS 625.090(1)(a). This is a creative argument; however, it is unsupported by the language of KRS 625.090(1). The statute clearly says that the Cabinet must prove by clear and convincing evidence that a trial court—including the present trial court—has previously found the child to be abused or neglected. Contrary to Appellant's argument in this case, neither the statute nor any other persuasive authority [7] permits the existence of intervening adjudications to affect this burden. The trial court properly concluded as much, and accurately stated that it could not add to the statute what was not already there. We agree with the trial court's reading of KRS 625.090(1)(a).

Appellant further asserts that the Cabinet's use of neglect findings from closed

---

5. We note that when the trial court stated its intention to take judicial notice of the entirety of the four juvenile case files and the orders therein, Appellant did not object. Therefore, it is questionable whether this particular basis for her argument is preserved. Nonetheless, we refute her argument on substantive grounds.

6. Kentucky Rules of Evidence.

7. In fact, other than quoting the statutory definition of a dependent child, Appellant cites no authority in support of her assertion that the trial court's 2012 adjudication of the children as "dependent" prevented use of the 2010 adjudication in the termination proceedings against her.

cases in satisfying its burden under KRS 625.090(1), if permitted, "will place an undue hardship on families of this Commonwealth" by terminating a parent's rights despite his or her actions subsequent to the finding and by placing parents in constant "fear that the Cabinet could come in at any time and involuntarily terminate their parental rights." We answer this unsupported and unpersuasive parade of horribles with this fact: the statutory framework for the involuntary termination of a parent's parental rights has, time and again, passed legal muster while protecting children from the more intolerable fear of a neglectful or abusive parent. Appellant's policy-based argument cannot stand against the weight of KRS 625.090(1), which clearly permits the use of prior adjudications in establishing a basis for termination. Therefore, we observe no error in the use of the 2010 adjudication of neglect in terminating Appellant's parental rights.

## II. The Factors of KRS 625.090(2)

■ Pursuant to KRS 625.090(2)(e), the trial court concluded that Appellant, "for periods of not less than six months, has failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child, and there is no reasonable expectation of improvement in parental care and protection, considering the age of the child." According to the trial court, Appellant's case also satisfied subsection (2)(g) of the same statute. The Court held that Appellant, "for reasons other than poverty alone, has failed to provide or has been incapable of providing essential food, clothing, shelter, medical care, or education necessary and available for the child's well-being, and there is no reason-

able expectation of significant improvement in the immediately foreseeable future . . . ."

Appellant argues that the Cabinet failed to present clear and convincing evidence of any of these, or any other, factors in KRS 625.090(2). We disagree. While the trial court's orders terminating Appellant's parental rights do not expound on what evidence specifically satisfied KRS 625.090(2), a review of the testimony and exhibits submitted at trial prove sufficient to support the trial court's findings and conclusions as to this factor.

The testimony at trial established that the Cabinet satisfied its statutory burden. Mau testified to Appellant's ongoing mental health issues and to the fact that these issues frequently left her unable to parent her children. Appellant herself admitted to her reluctance to seek help for her son's own mental health issues. Hines testified specifically that Appellant had failed to provide for the children for a period of more than six months and that there was no prospect for improvement. More specifically, Hines testified that in the years prior to 2012, Appellant failed to maintain stable housing and employment, forcing the children to move seven times in one year. Hines testified to Appellant's refusal to comply with safety plans the Cabinet proposed, including exclusion of father from the household following incidences of domestic violence. Hines also cited Appellant's failure to enroll the children in headstart programs and to undergo nutritional instruction regarding at least one of her children who had been diagnosed with a failure to thrive. Both Mau and Hines testified that when they ceased work on Appellant's case, there was no prospect for improvement.[8]

8. Mau testified that, given the family's history with the Cabinet, there was no case plan, and

the Cabinet could provide no service, the

Contrary to Appellant's contention on appeal, the Cabinet met its burden of showing the existence of at least one factor listed in KRS 625.090(2). Though Appellant chooses on appeal to focus on what she has accomplished since the children were removed in mid–2012, she is unable to overcome the fact that at the time of the petitions for termination and the hearing in 2013, the facts of the preceding seven years more than satisfied the requirements of KRS 625.090(2)(e) and (g).

### III. Best Interest of the Children

■ As we mention *supra,* a trial court must also conclude that termination is in the child's best interest. KRS 625.090(3) directs a trial court to consider the existence of the following factors in making that determination:

(a) Mental illness as defined by KRS 202A.011(9), or an intellectual disability as defined by KRS 202B.010(9) of the parent as certified by a qualified mental health professional, which renders the parent consistently unable to care for the immediate and ongoing physical or psychological needs of the child for extended periods of time;

(b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;

(c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts have been substantiated in a written finding by the District Court;

(d) The efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child;

(e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered; and

(f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.

Appellant contends that the Cabinet failed to establish by clear and convincing evidence that termination was in the children's best interest. Once again, the record shows otherwise. The record contains testimony and evidence addressing all six of the above factors. More importantly, this evidence supported the trial court's resolution of the best interest question in the Cabinet's favor.

Proceeding in order of the statutory factors, Hines and even Appellant herself testified to Appellant's diagnosis and proposed treatment of depression. There was testimony that Appellant consistently failed to address her condition through counseling and medication, and that this was a detriment to her ability to parent her children.

The record demonstrates that the Cabinet substantiated several allegations of neglect against Appellant, and that in 2010, she stipulated to neglect of all four children. Appellant contends that the trial court struck from the record testimony to this effect; however, Appellant herself acknowledged her 2010 stipulation, as did documents submitted at trial.

From 2006 until the trial court granted the Cabinet's 2012 motion to waive the reasonable efforts requirement of KRS 625.090(3)(c), the Cabinet, through a CATS

completion of which would result in reunification.

evaluation, the services of at least three case workers, and five case plans, attempted to assist Appellant with her mental health issues, her history of abusive partners, and with meeting the medical, emotional, and educational needs of her children. The Cabinet's witnesses testified that Appellant consistently refused or failed to comply with case plans and with other reasonable requirements which, if met, could have led to reunification with her children. Mau specifically cited Appellant's failure to address her depression and abusive past as major reasons reunification never occurred.

The record in this case exhaustively documents six years of services provided by the Cabinet in the hope of keeping Appellant with her children or reuniting them following removal. For this reason, we are taken aback by Appellant's contention on appeal that "[t]here was no evidence presented by the Cabinet regarding any efforts that were made on its part prior to [waiver of reasonable efforts]." This is not accurate.

Regarding the children's, "physical, emotional, and mental health ... and the prospects for the improvement of [their] welfare if termination is ordered[,]" the Cabinet presented testimony from the ongoing worker on Appellant's case. She testified that all four children made marked improvement since removal from Appellant's home and were thriving in their foster homes.

Finally, Appellant herself testified that following an order to pay child support toward the Cabinet's care of her children, she accrued an arrearage of more than $2,300 by January of 2013. She also testified that in the six months prior to the termination hearing, she made two payments. Hence, on the day of the hearing, Appellant remained substantially behind in financial support for her children.

Appellant contends that "the record is devoid of any evidence from the Cabinet regarding" the statutory factors of a child's best interest. In fact, the record is replete with evidence regarding every factor in KRS 625.090(3)(c). The record supported the trial court's conclusion that termination served the best interest of these children.

## Conclusion

As always, we do not take lightly our review of the trial court's decision to terminate parental rights, as we take no pleasure in terminating a parent-child relationship. However, Kentucky law clearly sets forth the burden of proof for termination, and while Appellant may have recently begun to address the multitude of issues which plagued her family, her pattern of behavior in the preceding years more than meets the statutory burden. The evidence in the record supports the trial court's decision to terminate Appellant's parental rights.

The order of the Franklin Circuit Court is affirmed.

ALL CONCUR.