April **RETHERFORD**, Appellant

v.

Kyle **MONDAY**, Appellee

**NO. 2015-CA-001803-ME**

Court of Appeals of Kentucky.

RENDERED: SEPTEMBER 2, 2016; 10:00 A.M.

BRIEF FOR APPELLANT: Allen McKee Dodd, Louisville, Kentucky

BRIEF FOR APPELLEE: Cameron C. Griffith, Lebanon, Kentucky

BEFORE: COMBS, J. LAMBERT AND VANMETER, JUDGES.

## OPINION

COMBS, JUDGE:

Appellant, April Retherford (April), appeals from a judgment of the Casey Circuit Court designating Appellee, Kyle Monday (Kyle), as the primary residential parent of the parties' one minor child. April contends that the court failed to make specific independent findings and that it merely adopted the proposed findings submitted by Kyle. We agree. Therefore, we vacate and remand with instructions.

April and Kyle were never married. They lived together for approximately four years—first in Indiana. They are the natural parents of one child (Daughter), born December 30, 2010, in Fayette County, Kentucky. Before they separated, the parties were living with Kyle's paternal grandfather in Liberty, Kentucky. On April 13, 2012, April departed with Daughter and returned to her parents' home in Kokomo, Indiana, where she currently resides. Kyle currently lives in Liberty, Kentucky.

The parties initially agreed to sharing joint custody of Daughter. However, contested issues arose as to the designation of the primary custodial parent, the time-sharing schedule, child support, and the residence of the child when she begins school.

On April 19, 2012, Kyle filed a Petition for Custody requesting joint custody and asking that he be designated as the primary residential parent. On April 23, 2012, April filed a Response which reflects that an Emergency Protective Order (EPO) gave her custody of the child and that the EPO had been dismissed. April sought temporary and permanent custody. She also filed a Motion for Temporary Custody and Child Support at that time.

Lengthy and quite protracted proceedings followed, including an order of the court that each party undergo psychological testing. April filed successive motions to compel Kyle to respond to her requests for discovery and to provide contact information. At one point during the course of the litigation, the Cabinet for Health and Family Services became involved.

On July 31, 2014, Jolene Blevins, a social worker for the Cabinet, received a phone call on an after-hours hotline. Mrs. Blevins testified at the trial about the allegations that the caller leveled at Kyle; i.e., that he was "antigovernment" in his social/political orientation; that the house he was building in rural Casey County had no plumbing or electricity; that the son of his girlfriend had acted in a sexually inappropriate manner with the child; that the child appeared to be dirty and too thin after visitations with Kyle.

Mrs. Blevins followed up with law enforcement officials and undertook a visit and investigation concerning the allegations. Ms. Blevins did not see anything out of the ordinary, any indication that the child was afraid of Kyle, or any evidence that she had been sexually abused. Following the investigation and consultation with her supervisor, a joint decision was made that the matter was unsubstantiated and the case was closed.

More than two years after Kyle initiated his petition for custody, the trial court entered an order on August 8, 2014, directing the parties to continue the time-sharing arrangement already in place pending further orders of the court.

Numerous contested issues arose during deposition testimony and at trial concerning living arrangements for the child. Among them were: fitness of the house being built by Kyle, his alleged inattention to her medical and dental care, and the proper avenue for her education (i.e, either

homeschooling or public schools). April testified that she has carefully tended to the child's medical care and educational and cultural needs, including the child's attendance at a Montessori school that goes through kindergarten.

At the conclusion of trial, the court directed the parties to submit proposed findings of fact and conclusions of law. April filed hers on May 11, 2015; Kyle's were filed on May 18, 2015.

On October 9, 2015, the court awarded joint custody, holding that it would be in the best interest of Daughter that she reside primarily with Father in Casey County, Kentucky, and that she attend the county's public schools.

On October 19, 2015, April filed a Motion to Alter, Amend, or Vacate; she filed an amended Motion on October 26, 2015. By Order of October 26, 2015, the trial court granted the Motions in part and denied them in part. By agreement of the parties, the court amended its October 9, 2015, Order to continue the alternating two-week time-share schedule until Daughter begins kindergarten in the Fall of 2016. It also amended the date for April to pay child support to August 1, 2016. The rest of April's Motions and her requests for specific and/or additional findings of fact were denied. On November 23, 2015, April filed Notice of Appeal from the October 9, 2015, and October 26, 2015, orders.

█ On appeal, April contends that the trial court clearly erred in failing to make its own independent Findings of Fact and Conclusions of Law to support its Order of October 9, 2015. She also contends that the court erred in failing to order that Daughter should primarily reside with her in Kokomo, Indiana.

We shall restrict our discussion solely to the nature of the Findings and Conclusions, upon which ultimately the propriety of the decision will rest regarding the primary custodial parent.

█ CR [1] 52.01 provides in relevant part that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment ...." The rule "mandates that a *court* make findings of fact and conclusions of law." *Anderson v. Johnson*, 350 S.W.3d 453, 458 (Ky.2011) (emphasis original).

We have carefully reviewed the trial court's order of October 9, 2015. As April notes, the order as entered by the court bears the caption, **"Petitioner's Proposed** Findings of Fact, Conclusions of Law and Judgment." (Emphasis added.) The substantive content of the findings of fact, formatting, pagination, paragraph numbers, punctuation, and conclusions of law **are identical** to Kyle's Proposed Findings of Fact, Conclusions of Law, and Judgment. In fact, both contain the same typographical or grammatical errors: at page 3, paragraph 13, the word *"parent's"* should be *"parents."* At page 3, paragraph 16, line 4, the word *"parties"* should be *"party's."*

The only difference we can discern between the trial Court's Order and Kyle's proposed one is the effective date for calculating child support. At page 12, paragraph 5, of Kyle's Proposed Findings of Fact, Conclusions of Law, and Judgment, the date is August 1, 2015. At page 12, paragraph 5, of the trial court's October 9, 2015, Order, the date was changed to January 1, 2016, by using white-out/correction tape and writing over it. The trial court's signature also appears on page 12—as

1. Kentucky Rules of Civil Procedure.

does the "tendered-by" signature of Kyle's counsel.

■ The practice of adopting prepared findings of counsel as those of the court has been highly disfavored not only by CR 52.01 but by case law as well. The seminal case on this point is *Callahan v. Callahan*, 579 S.W.2d 385, 387 (Ky.App.1979), which holds as follows:

> [A]ppellate courts of this state have universally condemned the practice of adopting findings of fact prepared by counsel. In this case the judgment clearly recites that it was tendered by the attorney for the successful party. This practice has been repeatedly condemned because of the problems such findings present upon appellate review. Although we are totally sympathetic to trial judges and fully appreciate the difficulty of trial courts in handling the volume of cases that they must consider, ... we cannot condone the delegation by the trial court of its responsibility to make findings of fact, because based on such findings subsequent conclusions of law and the ultimate judgment results. It is critically important to the litigants to be assured that the decision making process is totally under the control of the trial judge. It is equally important for the appellate courts to be similarly confident if and when they become involved in the judicial process. Although under certain conditions, for purely clerical reasons, the preparation of some documents may be delegated to counsel, such a situation should be limited to routine matters and should be conducted under the close scrutiny of the trial court. [Citations omitted.]

Other cases have addressed this issue since *Callahan*. In *Bingham v. Bingham*, 628 S.W.2d 628 (Ky.1982), our Supreme

Court recognized and envisioned circumstances where delegation to counsel of the drafting of findings and conclusions was appropriate to assist the court in its clerical tasks. The *Bingham* Court found it noteworthy that "the trial judge prudently examined the proposed findings and conclusions and made several additions and corrections to reflect his decision in the case." *Id.* at 629. In *Bingham*, there "was no verbatim or mechanical adoption" of proposed findings and conclusions. *Id.* Nor was there any showing that the "findings and conclusions were not the product of the deliberations of the trial judge's mind." *Id.* 629–30.

This reasoning was followed in *Prater v. Cabinet for Human Res.*, 954 S.W.2d 954 (Ky.1997). In *Prater*, the Cabinet submitted its proposed findings, and the court adopted them without correction or change. However, the trial court had invited counsel for both parties to submit proposed findings. Presumably, the court then exercised its own discretion in making its selection in order to satisfy CR 52.01. No doubt, some degree of erosion of the *Callahan* rule has occurred.

A return to the more rigorous and scrupulous compliance with CR 52.01 as discussed in *Callahan* would appear to be the preferred precedent in cases involving families and children. In *Keifer v. Keifer*, 354 S.W.3d 123 (Ky.2011), our Supreme Court mandated in clear and admonitory language that CR 52.01 and applicable sections of KRS[2] Chapter 403 must receive absolute compliance, advising trial courts "that it is their duty to comply with the directive of this Court to include in all orders affecting child custody the requisite findings of fact and conclusions of law supporting its decisions." *Id* at 125. *Keifer* emphasizes the overarching gravity of this

**2.** Kentucky Revised Statutes.

process: "Consideration of matters affecting the welfare and future of children are among the most important duties undertaken by the courts of this Commonwealth." *Id.* at 125–26.

Having reviewed the record, we agree with appellant that many concerns indeed exist: the stability of Kyle's living arrangements; his sporadic income; where Daughter would actually be living and attending school if Kyle were the primary residential parent; whether Kyle would, in fact, insure that Daughter receives appropriate medical and dental care and treatment; and the fact that Kyle has no family in Kentucky while April has family and an established support system in Indiana (where both of Kyle's parents also live). These are, however, factors to be addressed independently and conscientiously by the trial court when it reassesses all of the trial testimony and makes its own impartial findings and conclusions on the ultimate substantive issue before it.

We vacate the trial court's order of October 9, 2015, and remand with instructions that the trial court make its own findings of fact from the evidence and its own conclusions of law in accordance with the mandate of *Keifer,* CR 52.01, and the factors set forth at KRS 403.270(2). We refrain from reaching the other issues raised by appellant.

J. LAMBERT, JUDGE, CONCURS.

VANMETER, JUDGE, CONCURS BY SEPARATE OPINION.

VANMETER, JUDGE, CONCURRING:

Although I concur in the result reached by the majority, I write separately because I disagree with its main rationale for vacating the trial court's decision. Regardless of what we may think of the practice of

trial courts signing documents prepared by counsel, *e.g., Callahan v. Callahan,* 579 S.W.2d 385, 387 (Ky.App.1979), the Kentucky Supreme Court, apparently does not share that view:

First, Appellant claims the trial court failed to make independent findings of fact as required by CR 52.01. He bases this allegation on the fact that the trial court adopted the Cabinet's proposed findings of fact without correction or change. The trial court requested both parties to submit proposed findings of fact, which both did. It is not error for the trial court to adopt findings of fact which were merely drafted by someone else. *Bingham v. Bingham,* Ky., 628 S.W.2d 628 (1982).

*Prater v. Cabinet for Human Res.,* 954 S.W.2d 954, 956 (Ky.1997). As noted by the majority, a trial court does not err by inviting counsel to submit Findings of Fact and Conclusions of Law, and then exercising its discretion in making its selection, as apparently occurred in *Prater. Keifer v. Keifer,* 354 S.W.3d 123 (Ky.2011), cited by the majority, does not compel a different result because the issue in that case was merely the insufficiency of the order, not whether the trial court had adopted a version tendered by one of the attorneys.

Under our civil rules, "[f]indings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. CR [3] 52.01. A custody determination "is a mixed question of fact and law requiring a two-tier analysis. First, we review a trial court's factual findings, disturbing them only if they are clearly erroneous—meaning they are unsupported by substantial evidence which is defined as that which is 'sufficient to induce conviction in the mind of a reasonable

---

**3.** Kentucky Rules of Civil Procedure.

person.'" *Ball v. Tatum*, 373 S.W.3d 458, 463–64 (Ky.App.2012) (quoting *B.C. v. B.T.*, 182 S.W.3d 213, 219–20 (Ky.App. 2005)).

That said, I concur with the result in the majority opinion since the trial court, in adopting Monday's view of the evidence, as set forth in his tendered Findings of Fact and Conclusions of Law, appears to have wholly discounted all of the evidence relating to the home environment that Monday provides for the child, Monday's compliance with Dr. Feinberg's recommendations, Monday's financial resources, and whether Monday is properly providing for the child's medical and dental care. In other words, the Findings appear to be unsupported by substantial evidence which is sufficient to induce conviction in the mind of a reasonable person.