RENDERED: MAY 22, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0742-MR

JOHN MICHAEL WEDDING                                        APPELLANT

v.

APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE LORI N. GOODWIN, JUDGE
ACTION NO. 12-CI-501424

HEATHER HARMON                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, ECKERLE, AND McNEILL, JUDGES.

EASTON, JUDGE: Appellant (John) challenges the Jefferson Family Court's decision which granted Appellee (Heather) sole custody of their teenage daughters and reduced his parenting time from an equal timesharing schedule to one overnight every other weekend. Having thoroughly reviewed the record, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

John and Heather got married in September 2003 and divorced in August 2013. They have two children, R.W. and S.W.[1] At the time of dissolution, the parties were awarded joint custody with equal parenting time.

To say that these divorce proceedings have been contentious would be an understatement. The parties have been in front of the family court on many occasions mostly through contempt motions and requests for the family court to decide parenting disputes. This is the second appeal in this dissolution action, but the third time these parties have been before this Court.[2]

In July 2021, John filed a motion for sole custody of the children and to modify the parenting schedule with a request to be the primary residential custodian. In August 2021, Heather filed a competing motion, asking the family court to name her the sole custodian and to have the children reside primarily with her. The parties agreed that a custody evaluation should be performed, and Dr. Sarah Szerlong was appointed. Dr. Szerlong completed her evaluation in

---

[1] With respect to the elder daughter this appeal is effectively moot. She is now eighteen years old. The younger daughter will be sixteen years old soon after the rendition of this Opinion.

[2] *See Harmon v. Wedding*, No. 2012-CA-000964-ME, 2013 WL 2150681 (Ky. App. May 17, 2013) (denial of Heather's request for a domestic violence order) and *Wedding v. Harmon*, 492 S.W.3d 150 (Ky. App. 2016) (affirming prior order prohibiting John from sending co-parenting emails to third parties).

September 2022. Her report was exceptionally thorough and detailed, approaching two hundred pages in length.

A final hearing on the parties' competing motions took place over three days, beginning on March 28, 2023, and concluding on October 11, 2023.[3] The family court issued its Findings of Fact, Conclusions of Law, and Order (Order) on November 12, 2024, which granted Heather sole custody of the children. It further limited John's parenting time to a 24-hour period every other weekend. John filed a Motion to Alter, Amend, or Vacate in late November 2024, which the family court denied in May 2025. This timely appeal followed. We will discuss further evidence and testimony as necessary below. The briefs filed for the parties are sufficiently compliant with the Kentucky Rules of Appellate Procedure to not require comment.

## STANDARD OF REVIEW

We review modifications of custody and timesharing for abuse of discretion. *Coffman v. Rankin*, 260 S.W.3d 767, 770 (Ky. 2008). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair or unsupported by sound legal principles." *Woodard v. Commonwealth*, 147 S.W.3d 63, 67 (Ky. 2004). We review factual findings for

---

[3] John's assertion that the hearings were stretched out over a period of two years is patently false. Unfortunately, this is not the only example of when John mischaracterizes the record. Also, the delay between hearings was largely due to John's requests for continuances.

clear error. *Turner v. Turner*, 672 S.W.3d 43, 50-51 (Ky. App. 2023). A finding of fact is clearly erroneous if not supported by substantial evidence, which is evidence sufficient to induce conviction in the mind of a reasonable person. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). We review a family court's legal conclusions under the *de novo* standard. *Brewick v. Brewick*, 121 S.W.3d 524, 526 (Ky. App. 2003).

## ANALYSIS

John makes several arguments for reversal of the family court's Order. First, he argues the family court abdicated its duty by wholesale adoption of Heather's proposed Findings of Fact and Conclusions of Law. He argues the parenting schedule is a violation of KRS[4] 403.320. He alleges the family court relied on facts not in evidence, as well as undisclosed and non-expert testimony in rendering its Order. John claims the family court failed to consider the statutory "best interest" factors of KRS 403.270 and ignored the children's wishes. Finally, he argues cumulative error. We will address each argument, although a bit out of the order in which John presents them.

John argues the parenting schedule outlined in the family court's order violates KRS 403.320. This statute states:

> (3) The court may modify an order granting or denying visitation rights whenever modification would serve the

---

[4] Kentucky Revised Statutes.

-4-

best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health.

Before the issuance of the Order, the parties had joint custody with equal time sharing. The Order granted Heather sole custody, with John having parenting time with the children every other weekend from 5:00 p.m. on Saturday to 5:00 p.m. on Sunday. "As used in the statute, the term 'restrict' means to provide the non-custodial parent with something less than 'reasonable visitation.'" *Kulas v. Kulas*, 898 S.W.2d 529, 530 (Ky. App. 1995). Based on the circumstances of this case, we agree with John that this change in timesharing is a restriction on his parenting time. To support this change, the family court had to find serious endangerment of the children's "physical, mental, moral, or emotional health," which obligation the family court acknowledged in its Order.

John argues the family court made no such finding. A thorough review of the family court's Order shows this argument to be inaccurate and disingenuous. The family court made several findings to support this conclusion: "The Court agrees with Dr. Szerlong that John's parenting style, including exposing the children to interpersonal conflicts and continued co-parenting dysfunction, detrimentally impacts the children."[5]  "Both Dr. Hammon and Dr.

---

[5] Findings of Fact, Conclusions of Law, and Order, entered November 12, 2024, page 48, TR at 1810.

Szerlong testified that John's ongoing behavior is damaging to the children and warrants immediate attention."[6]

> Simply put, John's behavior is continuing and ongoing and it is unlikely to stop. It is a threat to the girls' emotional well-being. The only way to protect the girls from this destructive, damaging and unhealthy behavior is to limit their time with John. The current parenting schedule seriously endangers the children's mental, moral and emotional health, and John's parenting time should be restricted as a result.[7]

The family court explicitly made the finding required to restrict John's parenting time. His first argument has no merit.

John next argues the family court relied on facts not in evidence. He first complains about a statement made by the prior family court judge during a 2014 hearing. He argues that because no one admitted documentation of that remark into evidence during the hearings, the family court could not use it.

"[I]t is a well-established principle that a trial court may take judicial notice of its own records and rulings, and of all matter patent on the face of such records, including all prior proceedings in the same case." *M.A.B. v. Commonwealth Cabinet for Health & Fam. Servs.*, 456 S.W.3d 407, 412 (Ky. App. 2015). This case has been ongoing since 2012. The parties appeared in front of

---

[6] *Id.* at 49.

[7] *Id.* at 52.

several family court judges.  It does not matter that it was a prior judge who made a statement in this case.  The current judge could take notice of it if it took place during the course and scope of the ongoing litigation.  "The court is an entity, not a person, and when one judge is replaced by another, whether the reason be death, disability, election or otherwise, the new judge is empowered to carry on the business of the court to the same extent as his predecessor, had he remained on the bench."  *Herring v. Moore*, 561 S.W.2d 95, 98 (Ky. App. 1977).  There was no error in remarking on a statement made by the prior family court judge in this case, particularly when the statement is relevant to show the length of ongoing behavior.

John next objects to the family court's reliance on statements made by collateral sources interviewed by Dr. Szerlong in her custody evaluation, as none of these collateral sources testified in the hearings.  He specifically notes that "[t]he Final Order references statements *allegedly* from 'school personnel Gutierrez, Hough, Haswell, and Satterfield,' claiming they observed the children in distress after visits with their father."[8]  (Emphasis in original.)  While the Order does reference some of the statements of the collateral sources, these statements were relied upon by Dr. Szerlong in her evaluation, and Dr. Szerlong testified to them *without objection* during the hearing.  Furthermore, this Court has read the entirety of the Order multiple times, and at no point does the family court state

---

[8] Appellant Brief, pages 11-12.

these witnesses observed the children in distress after John's parenting time. John's contentions on this point are also without merit.

John's next claim of error is that the family court improperly relied on the testimony of Dr. Anne Hammon, the reunification therapist appointed by the family court by agreement of the parties. John alleges she was never disclosed as an expert yet was allowed to testify as one. John's argument on this point fails as well.

First, John references two statements in his Appellant brief that were not in the family court's Order. This Court has no idea where these statements originated. Furthermore, Heather disclosed Dr. Hammon as a witness, and the only objection to her testimony at the hearing was regarding an ultimate recommendation on a parenting schedule, which she did not give. The family court allowed Dr. Hammon to testify to her opinion as to how the reunification counseling was going and if either parent hindered any progress. No error occurred in this regard.

John next argues that the family court abdicated its duty under CR[9] 52.01 by adopting Heather's proposed findings verbatim. He alleges that the Order entered is Heather's draft with no edits and that this indicates the family court did not independently evaluate the evidence presented.

---

[9] Kentucky Rules of Civil Procedure.

CR 52.01 states, in relevant part, "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon[.]" "The practice of adopting prepared findings of counsel as those of the court has been highly disfavored not only by CR 52.01 but by case law as well." *Retherford v. Monday*, 500 S.W.3d 229, 232 (Ky. App. 2016). The primary concern is that the family court "does not abdicate its fact-finding and decision-making responsibility under CR 52.01. However, the delegation of the clerical task of drafting proposed findings of fact and conclusions of law under the proper circumstances does not violate the trial court's responsibility." *Bingham v. Bingham*, 628 S.W.2d 628, 629 (Ky. 1982). As John puts it, judges can delegate typing but not thinking,

There is case law both allowing and rejecting the practice of adopting the proposed findings of a party. The Order here was fifty-four pages long and exceptionally detailed. This Court performed a detailed review of Heather's proposed findings as compared to the final Order entered. There were some minor changes made. For example, in several locations, R.W.'s name was spelled out in Heather's tendered order, whereas the family court edited all of them to include only initials. The family court corrected some minor typographical errors, while others were not corrected. Significantly, Heather's proposed order had two alternative suggestions for the ultimate timesharing arrangement, and the family

court selected one while omitting the other paragraph. The Order did not contain the same glaring error as the final order in *Retherford*, where the final order's caption read "Petitioner's Proposed Findings of Fact[.]" *Retherford*, *supra*, at 231.

In fairness, the substantive portions of the factual findings in the Order were identical to those in Heather's proposed order. But the fact that the family court did make changes, albeit minor ones, to the proposed order and ultimately used it to indicate a choice from alternatives offered in the draft shows that the proposed order was thoroughly reviewed and considered with the family court adopting the facts as stated and then making the ultimate decision in the Order.

The facts the family court made in the Order are not clearly erroneous, even if the facts outlined in the Order are admittedly one-sided. It is also important to note that the family court selected the alternative in Heather's proposed order that found serious endangerment and restricted John's parenting time. The other alternative offered in Heather's proposed order did not have this finding, and it would have granted more parenting time to John. This shows a clear intent of the family court as it made its decision.

While best practice may have been to make more changes and not adopt Heather's wording so fully, we find the Order and the history in this case more analogous to *Bingham*, where the Supreme Court affirmed the family court as

-10-

compared to *Retherford*, in which this Court vacated the order and remanded the case for the family court to state its own findings. We also determine this case is analogous to *T.R.W. v. Cabinet for Health and Family Services*, wherein we stated "we find the trial court did not commit reversible error. The court ordered both parties to submit a proposed judgment and the trial judge was actively engaged with the bench trial proceedings." 599 S.W.3d 455, 459 (Ky. App. 2019). While we caution family courts to avoid adopting a party's findings of fact in totality, in this instance, we find no error.

John next argues that the family court's Order failed to consider the statutory "best interest" factors of KRS 403.270(2), which outlines factors for the family court to consider when determining custody. The statute reads, in its entirety:

> (2) The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent and to any de facto custodian. Subject to KRS 403.315, there shall be a presumption, rebuttable by a preponderance of evidence, that joint custody and equally shared parenting time is in the best interest of the child. If a deviation from equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent or de facto custodian has with the child and is consistent with ensuring the child's welfare. The court shall consider all relevant factors including:
>
> (a) The wishes of the child's parent or parents, and any de facto custodian, as to his or her custody;

-11-

(b) The wishes of the child as to his or her custodian, with due consideration given to the influence a parent or de facto custodian may have over the child's wishes;

(c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;

(d) The motivation of the adults participating in the custody proceeding;

(e) The child's adjustment and continuing proximity to his or her home, school, and community;

(f) The mental and physical health of all individuals involved;

(g) A finding by the court that domestic violence and abuse, as defined in KRS 403.720, has been committed by one (1) of the parties against a child of the parties or against another party. The court shall determine the extent to which the domestic violence and abuse has affected the child and the child's relationship to each party, with due consideration given to efforts made by a party toward the completion of any domestic violence treatment, counseling, or program;

(h) The extent to which the child has been cared for, nurtured, and supported by any de facto custodian;

(i) The intent of the parent or parents in placing the child with a de facto custodian;

(j) The circumstances under which the child was placed or allowed to remain in the custody of a de facto custodian, including whether the parent now seeking custody was previously prevented from doing so as a result of domestic violence as defined in KRS 403.720 and whether the child was placed with a de facto

custodian to allow the parent now seeking custody to seek employment, work, or attend school; and

(k) The likelihood a party will allow the child frequent, meaningful, and continuing contact with the other parent or de facto custodian, except that the court shall not consider this likelihood if there is a finding that the other parent or de facto custodian engaged in domestic violence and abuse, as defined in KRS 403.720, against the party or a child and that a continuing relationship with the other parent will endanger the health or safety of either that party or the child.

John argues the family court ignored these factors, but he focuses solely on the assertion that the family court did not take the children's wishes into consideration. While the family court did not outline the factors specifically, it did reference the appropriate statute and gave enough detail to support its conclusion.

As previously stated, this was a detailed, fifty-four-page Order. It is not a requirement for the family court to perfectly match each statutory factor with a particular finding of fact. The family court's findings clearly relate to the best interest of the children. "The statutory guidelines of KRS 403.270 do not include a definition of the best interests of the child standard; however, KRS 403.270(2) requires the trial court to consider all relevant factors and provides a list of *non-exclusive*, demonstrative factors to be considered in custodial determinations." *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008) (emphasis added). The legislature did not limit the statute to the factors listed. *Barnett v. White*, 584 S.W.3d 755, 760 (Ky. App. 2019).

John is correct that the family court's Order does not express the wishes of the children. Yet the family court determined that despite the wishes of the children, John's actions and behavior led to an unhealthy and enmeshed relationship between him and R.W., that R.W. was becoming alienated from Heather, and that John inappropriately adultified or even "parentified" R.W. He allowed the children to make age-inappropriate decisions and inserted them into his and Heather's co-parenting conflicts. And despite the admonition of the counselors and therapists involved in this case, John continued to do so. The family court found that this was damaging to the children. So, even if the family court had accepted testimony that the children wanted to keep an equal timesharing schedule, which John suggested, that is only one factor to consider, and the family court had the discretion to determine that the harm being done to the children by the current schedule outweighed that single factor.

This Court cannot say that the family court abused its discretion or that its factual findings were clearly erroneous based on the voluminous record before us. "Trial courts have broad discretion to decide custody and timesharing. In reviewing a decision as to where a child will primarily live, we must give a great deal of deference to both the trial court's findings of fact and discretionary decisions. The trial court is in the best position to resolve the conflicting evidence and make the determination that is in the child's best interest. So long as the trial

court [carefully] considers the mandate of KRS 403.270, including giving due consideration to all relevant factors, we will defer to its decision if it is neither clearly erroneous nor an abuse of discretion." *Barnett*, *supra*, at 759 (citations omitted).

## CONCLUSION

Accordingly, we AFFIRM the order of the Jefferson Family Court.


ALL CONCUR.

BRIEFS FOR APPELLANT:

John H. Helmers, Jr.
Melina Hettiaratchi
Louisville, Kentucky

BRIEF FOR APPELLEE:

Melanie Straw-Boone
Louisville, Kentucky